IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


DAVID R DURDEN,

    Plaintiff,
v.                                                        CASE NO. 4:05-cv-00226-MP-EMT

MONICA DAVID,
FREDERICK B DUNPHY,
FLORIDA PAROLE COMMISSION,
JIMMIE HENRY,
JOHN DOES,
TENA PATE,

    Defendants.
_____/

**O R D E R**

This matter is before the Court on Doc. 14, Report and Recommendations (R&R) filed by Magistrate Judge Elizabeth M. Timothy, and Doc. 15, Objection to the R&R, filed by David R. Durden. For the reasons below, the Court adopts the Magistrate's Report and Recommendations.

Plaintiff, David R. Durden, is an inmate of the Florida correctional system. Plaintiff alleges Defendants, current and former Parole Commission members, violated the Ex Post Facto clause of the Constitution by spacing his parole interviews five years apart instead of two years apart. In support, Plaintiff states he was convicted of sexual battery in 1982 and sentenced to two-hundred years in the Florida Department of Corrections (DOC) in 1984. From the time of Plaintiff's entry into the DOC in 1984 until some time in 1997, Plaintiff was interviewed for parole by the Commission every two years. However, a Florida Statute enacted in 1997, Fla. Stat. §947.174, was applied to Plaintiff by Defendants and resulted in Plaintiff being interviewed

by the Commission every five years instead of every two years.  As relief, Plaintiff seeks an "immediate [parole] hearing and [parole hearings] every two years thereafter."  The pertinent part of the Florida Statute that was applied to Plaintiff states:

> Subsequent [parole] interviews.
>
> (1)(b) For any inmate convicted of murder, attempted murder, sexual battery, attempted sexual battery, or who has been sentenced to a 25 year minimum mandatory sentence . . . , and whose presumptive parole release date is more than 5 years after the date of the initial interview, a hearing examiner shall schedule an interview for review of the presumptive parole release date. Such interview shall take place within 5 years after the initial interview and once every 5 years thereafter if the commission finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing. For any inmate who is within 7 years of his or her tentative release date, the commission may establish an interview date prior to the 5-year schedule. [Fla. Stat. §947.174(1)(b)]

The Magistrate's R&R finds that Florida's Parole Statute, Fla. Stat. § 947.174, creates "only the most speculative and attenuated risk of increasing the measure of punishment," therefore it does not violate the Ex Post Facto clause.  As a result, the R&R recommends that Plaintiff's Ex Post Facto claim be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2) for Plaintiff's failure to state a claim upon which relief may be granted.  Plaintiff objects to the Magistrate's R&R stating that he "has the right via discovery, to show that, in this case, the amendment to the parole statute did create a significant risk of increased punishment."

The Supreme Court set out how to analyze whether the application of an amended parole statute violates the Ex Post Facto clause in <u>California Dep't. of Corrections v. Morales</u>, 514 U.S. 499, 509 (1995).  The Supreme Court stated "[i]f a delay in parole hearings raises ex post facto concerns, it is because that delay *effectively increases* a prisoner's term of confinement . . . ." <u>Morales</u>, 514 U.S. at 509 n.4 (emphasis added).  Not every retroactive procedural change that

creates a risk of affecting an inmate's term is prohibited. Id. at 503. In analyzing the relevant state statute, the Supreme Court found significant that the new California statute applied "only to a class of prisoners for whom the likelihood of release on parole [was] quite remote." Id. at 510. It also found that the law was "carefully tailored" because (1) it had no effect on the date of a prisoner's initial parole suitability hearing, affecting only the timing of subsequent hearings; (2) inmates were given a full hearing as to whether it was "not reasonable to expect that parole would be granted at a hearing during the following years"; (3) the parole board had to state its finding on that question in writing; and (4) the board still had discretion to alter the frequency of parole hearings. Id. at 511-12. From this, the Court concluded that "[i]n light of the particularized findings required under the amendment and the broad discretion given to the Board, the narrow class of prisoners covered by the amendment cannot reasonably expect that their prospects for early release on parole would be enhanced by the opportunity of annual hearings." Id. at 512. The Court determined that the new law "create[d] only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes," id. at 514, and thus the application of the amended parole statute did not violate the Ex Post Facto Clause.

The parole statute at issue here is Florida Statute §947.174. Several Courts have already looked at Fla. Stat. §947.174 and decided that, like the statute in Morales, it does not violate the Ex Post Facto clause of the constitution. See Tuff v. State, 732 So. 2d 461, 463:

> The California law challenged (and ultimately upheld) in Morales is quite similar
> to section 947.174, Florida Statutes (1997). The Florida statute applies to a
> limited number of inmates, though it does apply to more inmates than the
> California statute. The Florida statute only applies to inmates convicted of
> murder, attempted murder, sexual battery, attempted sexual battery, or whose

> sentence is 25 years minimum mandatory. See § 947.174, Fla. Stat. (1997). Moreover, as in Morales, the Florida statute is narrowly constructed: (1) it affects the timing only of subsequent (not initial) parole hearings; (2) it requires a hearing on the matter; (3) it applies only when the parole commission finds that "it is not reasonable to expect that parole will be granted at a hearing during the following [five] years"; and (4) it requires the commission to state the bases of its decision in writing. See Id.

The court in Tuff concludes that FL Stat. § 947.174 "is not violative of the Ex Post Facto Clause." Id. at 466. In a very recent case, Penoyer v. Briggs, 206 Fed. Appx. 962 (11th Cir. 2006), the 11th Circuit stated the Florida Statute does not violate the Ex Post Facto clause:

> it appears that this statute [FL Stat. § 947.174] was crafted to reduce the "futile" work of frequently "reannouncing" the denial of parole to a class of prisoners who, in the Commission's broad discretion, were very unlikely to warrant it. Accordingly, Penoyer has not alleged facts showing that changes in the law "create[d] a significant risk" of increasing the length of his imprisonment, and, as in Morales, we conclude that he failed to state a cognizable Ex Post Facto clause violation as a matter of law.

Although the 11th Circuit has thus already decided that the Florida Parole Statute does not violate the Ex Post Facto clause, Plaintiff relies on an unreported 11th Circuit case, Henry v. Chestnut for the proposition that he should be allowed discovery before his claim is dismissed:

> Consistent with the Supreme Court's mandate in Garner, we recently held that in determining whether the retroactive application of parole regulations violated the Ex Post Facto clause, the District Court must consider the evidence from the prisoner that the regulation, as applied to his sentence, creates a significant risk of increasing punishment. See Harris v. Hammonds, 217 F.3d 1346, 1347 (11th Cir. 2000). *Under controlling authority, therefore, a claimant properly alleging a Ex Post Facto Clause violation should be allowed to conduct discovery to show that the retroactive application of the amended parole state, as applied to him, created a significant risk of increased punishment. See id.* ... In addition, because Chestnut's claim was dismissed before discovery began, he was not given an opportunity to make the showing required in Garner, namely that the amendment to the parole statute created a significant risk of increased punishment. See Garner, 120 S.Ct. at 1370. Because it does not appear that Chestnut can prove no facts in support of his claim that would entitle him to relief, the district court erred by dismissing this claim.

(Chestnut v. Henry, et al., Doc. No. 99-00511-cv-4-rh, unreported, (11th cir. 2001)(emphasis added)). The argument is that as discovery was allowed in Chestnut, Plaintiff, too, should be allowed to conduct discovery to show that the retroactive application of the amended Florida Parole Statute, as applied to him, created a significant risk of increased punishment. Plaintiff argues that because it is his burden to prove he suffered a significant risk of increased punishment, he should have the discovery opportunity to try to find supporting facts. However, the sole case Plaintiff relies upon, Chestnut, is an unreported case and not binding precedent on this Court. Moreover, this Court does not find the reasoning in Chestnut persuasive.

First, both the Garner and Harris cases that Chestnut follows relate to a Georgia Parole Statute, which is markedly different from the Florida Statute in question here. As stated above, the Florida State courts and the the 11th Circuit have held that the Florida Statute is not violative of the Ex Post Facto clause. In contrast, the 11th Circuit has previously held that the Georgia Statute is violative. Jones v. Garner, 164 F.3d 589 (11th Cir. 1999). The Jones Court noted that the Georgia regulation applied to a much broader range of inmates than the Statute in Morales, as it applied to any prisoner with a life sentence. Jones, 164 F.3d at 593-94. As a result, the court was "unable to conclude that [the Georgia regulation would] apply 'only to a class of prisoners for whom the likelihood of release on parole is quite remote.'" Id. Also, the court noted the lack of safeguards which would indicate the regulation was carefully tailored to relieve the board of the time-consuming process of denying parole to those who would not be paroled in the interim. Id. at 594. The Georgia regulation did not require any sort of hearing as to whether it was reasonable to expect that parole would be granted during the intervening eight years, and required no findings on this question. Id. at 594-95. Clearly, the Georgia Parole Statute is less

carefully tailored and lacks the level of safeguards the Florida Statute or the California Statute in Morales has.[1]  Because the underlying statute is different the analysis regarding discovery is different also.

One important difference between the Florida and Georgia Statutes is that the Florida Statute requires the parole commission to determine whether it is reasonable to expect that parole will be granted at a hearing during the following years while the Georgia Statute does not.  Thus, the Florida Statute, in its operation, requires an inquiry into the prisoner's individual circumstances.  Like the individual hearing required in the statute in Morales, the individual inquiry in the Florida Statute is an important reason the Ex Post Facto clause is not violated and discovery here is unnecessary.

In addition, unlike what is represented in Chestnut, a careful reading of the Garner opinion reveals that Garner does not actually mandate a prisoner has a right to conduct discovery.  The Garner Court only states that it cannot conclude the Georgia Statute violates the Ex Post Facto clause without the prisoner first conducting discovery to show "that as applied to his own sentence the law created a significant risk of increasing his punishment."  Garner is stating that the prisoner must show an individual adverse effect before Ex Post Facto clause

---

[1]The Supreme Court in Garner later reversed the 11th Circuit's decision in Jones because to show a violation of the Ex Post Facto clause, even with the much broader Georgia Statute, the prisoner had to show that he suffered an individual risk of increased punishment.  See Garner.  But, it remains that courts have found the Georgia Statute less carefully tailored and lacking the safeguards of the California Statute in Morales.  Note: Jones and Garner are the same case.  At the Supreme Court level the case is called Garner v. Jones instead of Jones v. Garner.

protections will apply. What <u>Chestnut</u> reasons is that because the prisoner has the requirement of showing an individualized risk to make his claim, discovery must be allowed to give the prisoner the chance to make this showing.

However, discovery is not always necessary. In the instant case, Florida's Parole Statute is carefully tailored so it does not create a significant risk of increased punishment. For the Florida Statute to even apply, the parole commission had to look at Plaintiff individually and determine it was not reasonable to expect that parole would be granted at a hearing during the following years. Even if discovery would be reasonable for a statute like Georgia's that lacks safeguards and is not narrowly constructed, this Court agrees with the Magistrate Judge that "[t]here is no need for discovery in this case, however, as the Florida statute is much more like the statute in <u>Morales</u>, and differs significantly from the Georgia regulation." (Magistrate's R&R, pg. 3, fn. 1).

<u>Harris</u>, the other case <u>Chestnut</u> relies upon, is also analyzing the Georgia Parole Statute. And, like <u>Garner</u>, <u>Harris</u> stated that it was important to determine whether the Georgia Statute created a significant risk of increased punishment to the individual prisoner. But, even considering the broader reach of the Georgia Statute, the <u>Harris</u> Court writes that

> "[t]he Supreme Court's opinion in <u>Jones</u> does not resolve the issue of whether [the Georgia Statute], in its operation, violates the Ex Post Facto Clause when applied to inmates who had been entitled to more frequent reconsideration hearings when they committed their crimes. Rather, it requires the district court to consider evidence of 'the general operation of the Georgia parole system' and any other evidence a prisoner challenging the regulation may produce that the amended parole regulation, 'as applied to his own sentence,' 'created a significant risk of increasing his punishment.'"

<u>Id</u>. quoting <u>Garner</u>. Like the Court in <u>Garner</u>, the <u>Harris</u> Court is not mandating discovery for all

Ex Post Facto claims regarding amended parole statutes.  It is only positing that the Court should consider "evidence a prisoner... may produce that the amended parole regulation, 'as applied to his own sentence,' 'created a significant risk of increasing his punishment.'"  Again, the factors which may necessitate discovery for the Georgia statute, that it is less narrowly-tailored and does not have adequate safeguards, are not present in the Florida Statute.  Furthermore, this Court feels it is complying with the language of Garner and Harris because the Court has considered whether the Florida Parole Statute, as applied to Plaintiff in his individual circumstances, significantly increased Plaintiff's punishment.  Here, it did not.  Discovery to make this finding is unnecessary.

Recently, in Penoyer v. Briggs, a case subsequent to Chestnut, the 11th Circuit upheld a District Court's decision to dismiss, as frivolous, an Ex Post Facto claim based on the amended Florida Parole Statute.  This Court finds the reasoning in Penoyer persuasive.  As discussed above, and decided in Tuff and Penoyer, the amended Florida Parole Statute is very similar to the California Statute in Morales that was held not violative of the Ex Post Facto clause.  The Florida Statute "does not share the defects of the Georgia rule noted by the Eleventh Circuit." Tuff, 732 So. 2d at 466.  Because the Florida Statute is narrowly constructed and only applies to a limited number of inmates who cannot reasonably expect parole, it creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause.  See Morales.

Ultimately, Plaintiff cannot reasonably expect that his prospects for early release on parole would be enhanced by the opportunity of hearings every two years instead of every five

years. Plaintiff was sentenced to two-hundred years in the Florida Department of Corrections. In addition, the Florida Parole Statute changes the timing of parole hearings to every five years only when "the commission finds that it is not reasonable to expect that parole will be granted at a hearing during the following [five] years and states the bases for the finding in writing." [Fla. Stat. §947.174(1)(b)]. Since this statute applied to Plaintiff, the commission has already examined Plaintiff's possibility for parole individually and determined that it is not reasonable for Plaintiff to expect parole in the following years. Moreover, this decision and the basis the commission used to arrive at the decision are in writing.

As a result, Plaintiff will not be able to show that the amended Florida Parole Statute, Fla. Stat. §947.174, created a significant risk of increased punishment as applied to him, and the instant claim can be properly dismissed without discovery. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Report and Recommendation of the Magistrate Judge is adopted and incorporated herein.

2. This action is DISMISSED, and the clerk is directed to close the file.

**DONE AND ORDERED** this _5th_ day of July, 2007

_s/Maurice M. Paul_
Maurice M. Paul, Senior District Judge